**JACOBSON LAW FIRM**
570 N. Columbus Blvd., Suite B
Tucson, Arizona 85711
Telephone (520) 834-8034
Facsimile (520) 844-1011
jeff@jacobsonlawfirm.net
Jeffrey H. Jacobson, State Bar No.: 019502
*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Samantha Williams, | Case No.: |
| Plaintiff, | **COMPLAINT** |
| v. | **Jury Trial Demanded** |
| Fidelity National Title Agency, Inc., | |
| Defendant. | |

For her Complaint against Defendant, Plaintiff, through counsel, alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. For all times relevant to this Complaint, Plaintiff Samantha Williams is female, domiciled in Arizona, and is a United States citizen.

2. Defendant Fidelity National Title Agency, Inc., (Fidelity) is a Domestic For-Profit (Business) Corporation, with offices in Pima County, Arizona.

3. Defendant is and was, at all relevant times, a private employer within the meaning of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, 42 U.S.C. §§ 2000e et seq. (Title VII).

4. For all times relevant to this Complaint, Plaintiff was an employee of the Defendant within the meaning of 42 U.S.C. § 2000e(f).

5. For all times relevant to this Complaint, Plaintiff worked at Defendant's former office, located at 1745 E. River Rd., Suite 145, Tucson, AZ 85718.

//

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

6. Prior to filing this civil action, on November 14, 2019, Plaintiff timely filed a written charge of discrimination with the United States Equal Employment Opportunity Commission (EEOC) pursuant to Title VII. Exhibit A.

7. On April 13, 2022, the EEOC issued a determination on the merits of the charge (Determination). Exhibit B.

8. The EEOC's Determination was that Defendant engaged in employment discrimination in violation of Title VII.

9. On January 5, 2023, the EEOC issued Plaintiff a Notice of Right to Sue. Exhibit C.

**GENERAL ALLEGATIONS**

10. Defendant hired Plaintiff in or about February 2004.

11. Plaintiff held a number of positions with Defendant, and was promoted to Branch Manager, Assistant Vice President, in or about 2013.

12. Plaintiff learned that she was pregnant in September 2018.

13. Plaintiff's medical providers determined that Plaintiff's pregnancy was high-risk.

14. Due to her pregnancy, Plaintiff was sick and out of the office from on or about October 29, 2018, to November 2, 2018.

15. While she was sick and at home, two co-workers called Plaintiff, concerned that Plaintiff's supervisor, Escrow Administrator Eric Schroeder, had told them (and others) that she had an abortion.

16. When Plaintiff returned to work, Plaintiff reported Escrow Administrator Schroeder's inappropriate statement to Escrow Administrator Schroeder's supervisor, County Manager April Kovari.

17. During the week of November 12, 2018, in a meeting with Plaintiff, Ms. Kovari told Plaintiff that she would no longer be Branch Manager and that she needed to train her replacement, Kim Reis.

18. Upon information and belief, Ms. Reis is female and was not pregnant at the time.

2

19. Ms. Kovari also told Plaintiff that she would be moving into an Escrow Officer position.

20. At the time Defendant demoted Plaintiff, she was the sole provider for a family of five.

21. Not only was the demotion from Branch Manager to Escrow Officer a significant change in Plaintiff's duties and responsibilities, but Escrow Officers make significant less money in base salary and commission than Branch Managers, and Plaintiff was no longer eligible to receive Branch Manager Incentive payments.

22. Ms. Kovari told Plaintiff that she would remain in a salaried position as an Escrow Officer; however, Defendant paid Plaintiff hourly for one or two pay periods.

23. After Plaintiff lodged a complaint with Defendant's Human Resources personnel about the hourly wages, Defendant started paying Plaintiff as a salaried employee.

24. As a result of Defendant demoting Plaintiff to the Escrow Officer position effective January 1, 2019, Plaintiff was no longer eligible for, and lost, her manager's incentive commission.

25. Defendant also changed escrows that had been opened in Plaintiff's name and changed them to Ms. Reis's name; as a result, Ms. Reis received the commissions on those escrows that Plaintiff was due and should have received.

26. From late November 2018 through April 2019, Ms. Kovari directed Plaintiff to provide a doctor's note every time she was out of the office for any reason. This direction violated Defendant's leave policy.

27. On at least one occasion, Plaintiff had a medical appointment during business hours. When Plaintiff returned to the office, because she did not have a doctor's note to return to work after the appointment, Ms. Kovari sent Plaintiff home (even though Plaintiff had been working in the office prior to her medical appointment.

28. During Plaintiff's pregnancy, she complained to Ms. Kovari and Human Resources Manager Vanya Smalley that Defendant was treating her pregnancy differently than any other employees' pregnancy had ever been handled. Plaintiff also told them that she was being treated differently and negatively because she was pregnant.

29. Defendant also removed Plaintiff from her participation in Defendant's Elite Leadership Development Coaching course. At the time Defendant removed Plaintiff from that course, Plaintiff was scoring at the top of the class for all assignments and grading.

30. Removing Plaintiff from Defendant's Elite Leadership Development Coaching Course negatively affected Plaintiff's ability to promote.

31. Plaintiff gave birth on April 22, 2019, over a month before her due date, and went out on leave pursuant to the Family Medical Leave Act (FMLA) of 1993, 29 U.S.C. § 2601 et seq.

32. Plaintiff's FMLA leave was scheduled to end on July 14, 2019. Plaintiff planned on returning to work at the end of her FMLA leave, and communicated her intent to do so to Defendant.

33. On July 5, 2019, Defendant terminated Plaintiff's employment.

## COUNT ONE
### (Pregnancy Discrimination in Violation of Title VII)

34. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth.

35. Title VII prohibits employers from discriminating against employees because of pregnancy.

36. For all times relevant, Plaintiff was a pregnant female, an employee of Defendant, and a member of a protected class under Title VII.

37. For all times relevant, Plaintiff was qualified for the position of Branch Manager and/or Escrow Officer, and capable of performing as such.

38. With the knowledge that Plaintiff was pregnant, Defendant demoted Plaintiff from the position of Branch Manager, Assistant Vice President, to Escrow Officer.

39. Defendant's demotion of Plaintiff due to her pregnancy constitutes unlawful discrimination on the basis of pregnancy in violation of Title VII.

40. As a result of Defendant's demotion of Plaintiff based upon her pregnancy, Defendant treated Plaintiff less-favorably that similarly-situated pregnant and non-pregnant employees in violation of Title VII.

41. Defendant willfully and wantonly disregarded Plaintiff's rights.

42. Defendant discriminated against Plaintiff in bad faith.

43. Defendant deprived Plaintiff of equal employment opportunity and otherwise adversely affected Plaintiff's status as an employee because of Plaintiff's pregnancy.

44. As a result of Defendant's discrimination, Plaintiff has suffered lost wages (including incentives and commission), the value of lost benefits, and other damages for which she should be compensated in an amount to be determined at trial.

## COUNT TWO
### (Sex/Gender Discrimination in Violation of Title VII)

45. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth.

46. Title VII prohibits employers from discriminating against employees because of their sex/gender.

47. During the course of employment, Defendant unlawfully and knowingly discriminated against Plaintiff based upon her sex/gender, and treated Plaintiff less favorably than similarly-situated male employees, in violation of Title VII.

48. Defendant's actions constituted discrimination and disparate, adverse treatment based upon sex/gender such that Defendant's intentional actions adversely impacted Plaintiff's terms, conditions, and privileges of employment.

49. Defendant's actions regarding Plaintiff demonstrates willful misconduct, malice, fraud, wantonness, oppression, and a complete lack of care; therefore, Plaintiff is entitled to an award of punitive damages to deter, punish, and penalize Defendant for and from similar future conduct.

50. As a result of Defendant's discrimination, Plaintiff has suffered lost wages (including incentives and commission), the value of lost benefits, and other damages for which she should be compensated in an amount to be determined at trial.

## COUNT THREE
### (Retaliation in Violation of Title VII)

51. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth.

5

52. Title VII and the ADA prohibit retaliation against an employee who opposes discrimination on the basis of gender, pregnancy, and/or disability.

53. While she was sick and at home, Plaintiff's supervisor, Escrow Administrator Eric Schroeder, told at least two of Plaintiff's co-workers that Plaintiff had an abortion.

54. Plaintiff reported Escrow Administrator Schroeder's abortion statements to both his supervisor, Ms. Kovari, and to Defendant's Human Resources Manager.

55. After Plaintiff returned to work and reported Escrow Administrator Schroeder's abortion statements, Defendant demoted Plaintiff from Branch Manager, Assistant Vice President, to Escrow Officer and ordered her to train her replacement.

56. Defendant also removed Plaintiff from her participation in Defendant's Elite Leadership Development Coaching course, which negatively impacted her ability to promote within the organization in the future.

57. After giving birth and while she was on FMLA leave, Defendant terminated Plaintiff's employment.

58. Defendant's adverse employment actions against Plaintiff constitute unlawful retaliation against Plaintiff in violation of Title VII.

59. Defendant's retaliatory actions were willful, deliberate, and intended to cause Plaintiff harm and/or were committed with reckless disregard of the harm caused to Plaintiff in violation of Plaintiff's federally-protected rights.

60. As a result of Defendant's unlawful retaliation, Plaintiff has suffered monetary damages for which she should be compensated in an amount to be determined at trial pursuant to 42 U.S.C. § 2000e-3(a).

## JURY TRIAL DEMAND

Plaintiff requests that the Court set this case for a jury trial.

## CLAIM FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendant as follows:

A. An award of actual damages in amount to be determined at trial, including lost wages;

   B. Non-economic damages for emotional distress, mental pain and suffering, inconvenience, emotional stress, fear, anxiety, embarrassment, humiliation, back pay, and front pay;

   C. An award of exemplary or punitive damages;

   D. An award of reasonable attorneys' fees and costs;

   E. An award of Plaintiff's pre- and post-judgment interest; and

   F. Award such other and further relief as this Court deems just and proper.

DATED this 4th day of April, 2023.

Respectfully submitted,

*/s Jeffrey H. Jacobson*
**JACOBSON LAW FIRM**
Jeffrey H. Jacobson
*Attorney for Plaintiff Samantha Williams*